UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| ANNIE PEARL MURPHY,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. ED CV 15-01588-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Annie Pearl Murphy ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and the matter dismissed with prejudice.

///

///

///

---

[1] On January 21, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as defendant under Federal Rule of Civil Procedure 25(d).

# I.

# BACKGROUND

Plaintiff applied for DIB on April 5, 2012, alleging disability beginning January 1, 2010. Administrative Record ("AR") 90, 140-47. After her application was denied, AR 91-95, 98-102, she requested a hearing before an Administrative Law Judge ("ALJ"), AR 105-06. An AJL held a hearing on June 7, 2013, taking testimony from Plaintiff, who was unrepresented, as well as a Vocational Expert ("VE"). AR 31-64.

In a written decision issued January 7, 2014, the ALJ denied Plaintiff's claim for benefits. AR 13-30. In reaching his decision, the ALJ found that Plaintiff last met the insured status of the Social Security Act on September 30, 2011. AR 18. Through Plaintiff's date last insured of September 30, 2011, the ALJ found that Plaintiff had the severe impairments of: "polyarthralgia and polymyalgia; lateral epicondylitis of both elbows; DeQuervain's tendinitis of the bilateral wrists; greater trochanteric bursitis of the hips; degenerative spurring in the right knee; hypothyroidism with thyroid lesions and nodules; headaches; and obesity." Id. He found that notwithstanding those impairments, Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: only occasional climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds; only frequent balancing, stooping, kneeling, crouching, crawling, pushing and/or pulling with the upper and lower extremities, and handling and fingering with the bilateral upper extremities; and no exposure to unprotected heights. AR 19. Based on the VE's testimony, the ALJ found that, through Plaintiff's date last insured, she could perform her past relevant work as a housekeeping cleaner, both as actually and generally performed, and in the alternative, that a hypothetical person with Plaintiff's age, education, work experience, and RFC was capable of making a successful adjustment to other work in the national

economy. AR 24-25. As such, he concluded that Plaintiff was not disabled through her date last insured. AR 25-26.

Plaintiff requested review of the ALJ's decision. AR 8-9. On June 15, 2015, the Appeals Council denied review. AR 1-7. This action followed.

## II.
## DISCUSSION

The parties dispute whether the Commissioner: (1) properly considered the medical evidence of record; and (2) properly assessed Plaintiff's credibility. See Joint Stipulation ("JS") at 3-4.

### A.   Medical Evidence of Record

Relying extensively on evidence submitted to the Appeals Council after the ALJ's decision, Plaintiff argues that the ALJ erred by failing to impose limitations based on her back and shoulder impairments and by giving "little weight" to her treating physicians' opinions. See JS at 4-12. For the reasons discussed below, the Court disagrees.

#### 1.   Relevant Facts
##### a.   Pre-2009 Medical Records Relating to Plaintiff's Injuries, Shoulders, and Back

*Plaintiff's Injuries.* On May 26, 2003, while working as a hotel laundry attendant, Plaintiff bent down to fold table linens. AR 718. She then lifted a bag of wet linens and felt a sharp pain in her back as she was trying to stand up. AR 696, 718, 747. Plaintiff reported the injury to her supervisor and went to the emergency room. AR 696, 709. She missed work for two days, after which she returned to modified work. AR 709-10, 718-19.

In 2004, Plaintiff was driving a vehicle that was hit on the passenger side. AR 689. She said in a deposition that her lower back hurt as a result of the accident. Id.

On November 8, 2005, Plaintiff slipped and fell on a wet floor during her

3

lunch break. AR 690, 725, 738, 745. As a result of the fall, she felt pain in her shoulders, neck, and under her armpit. AR 690. She also had "a lot of leg pain." Id. A doctor cleared her to return three days after the fall to modified work. AR 740, 742. According to records from an interview with Plaintiff in December 2006, she was taken off work by her family physician and placed on state disability six months after the fall. See AR 747.[2]

Plaintiff indicated that her car was rear-ended in August 2007 while she waiting at a stop sign. AR 807. She said that the accident "made her entire body hurt." Id.

*Plaintiff's Shoulders*. In May 2006, Plaintiff had an MRI examination of both shoulders. AR 678-79. The images revealed no bony fracture or contusion, intact glenoid labrums, and normally positioned bicipital tendons. Id. The MRI of the left shoulder indicated moderate impingement on the supraspinatus muscle and tendon as well as a tear of the tendon distally. AR 678. The MRI of the right shoulder indicated mild to moderate impingement on the supraspinatus muscle and tendon, and a small tear anteriorly and distally. AR 679.

On March 23, 2007, Dr. Peter J. Sofia performed decompression surgery on Plaintiff's left shoulder. AR 932-34. On May 9, 2007, Dr. Sofia noted that Plaintiff's left shoulder had "excellent motion" and "very good strength," but some pain. AR 942. He noted that Plaintiff's right shoulder had full motion and strength, but with pain. Id. He also noted a mildly positive impingement sign, and recommended a steroid injection for her right shoulder. Id. On May

---

[2] Plaintiff indicated that her last day of work was July 2, 2005. AR 747. It appears that her last day of work was actually in 2006, since she stated that "she worked for another six months" after her 2005 slip-and-fall injury, id., and she also stated in her application for DIB that she last worked in 2006, AR 142.

29, 2007, Dr. Sofia noted that Plaintiff "is still pleased with the right shoulder, which was injected previously." AR 945. She reported that her left shoulder was improving and she was "fairly happy with the result" of the surgery. Id.

On August 14, 2007, Dr. Sofia's examination of Plaintiff's left shoulder revealed "full active and passive motion" with "very little discomfort," "excellent strength" with minimal pain, and no sign of impingement. AR 955. He noted that Plaintiff's right shoulder had an "excellent exam" with "full motion and strength" and "almost no discomfort." Id. Plaintiff reported that she was "happy with her left shoulder" and had "no trouble" with the right. AR 954. She stated that she could "probably work" and would "go back to work." Id. Dr. Sofia also opined that Plaintiff "could work at this time." AR 955.

*Plaintiff's Back.* On June 28, 2003, Plaintiff had an MRI examination of her lumbosacral spine. AR 714-15. The MRI showed mild disc height reduction at L3-L4 and mild posterior disc bulging without impingement at L3-L4 and L4-L5. Id. The MRI also showed posterior disc protrusion producing mild left and moderate right lateral recess stenosis at L5-S1 with associated mild right L5 foraminal narrowing. AR 715.

A subsequent MRI examination on August 10, 2006, showed disc protrusion at L2-L3, L3-L4, L4-L5, and L5-S1 producing bilateral neuroforaminal encroachment. AR 919-20. The MRI also showed effacement of the L2 exiting nerve roots and S1 transiting nerve roots, and impingement on the L3, L4, and L5 exiting nerve roots. Id. The MRI showed straightening of the lumbar spine with osteophytes throughout. AR 918, 920. The vertebral body heights were maintained with disc desiccation at L3-L4 and L5-S1. Id.

  b. Physicians' Opinions

On March 22, 2010, Dr. Asheesh Pasi, one of Plaintiff's treating physicians, completed a check-the-box and fill-in-the-blank Physical Capacities

5

form for Plaintiff. AR 334-38. Dr. Pasi opined that Plaintiff could stand/walk for 2 to 4 hours at one time, and sit for 2 to 4 hours at one time, in an 8-hour workday. AR 336. Dr. Pasi checked a box indicating that Plaintiff is "restricted in using hands/fingers for repetitive motions" due to left shoulder tendonitis and decreased range of motion of her left upper extremities. Id. Dr. Pasi also opined that Plaintiff could occasionally lift/carry 10 pounds and could never lift/carry more than 10 pounds, climb, balance, stoop, kneel, crouch, crawl, or reach. AR 337.

On March 8, 2011, Dr. Philip Scheel, another of Plaintiff's treating physicians, completed the Physical Capacities form. AR 349-51. Dr. Scheel opined that Plaintiff could stand/walk for 0 to 2 hours at one time and 2 to 4 hours total in an 8-hour workday. AR 350. He also opined that Plaintiff could sit for 2 to 4 hours at one time and 2 to 4 hours total in an 8-hour workday. Id. Dr. Scheel checked the box indicating that Plaintiff is "restricted in using hands/fingers for repetitive motions" due to chronic left shoulder pain and bilateral wrist pain. Id. He opined that Plaintiff could never lift/carry any weight, climb, balance, stoop, kneel, crouch, crawl, or reach. AR 351. Dr. Scheel noted that Plaintiff would be evaluated by an orthopedist in the next 1 to 2 months. Id.

On June 27, 2012, Plaintiff was examined by Dr. Vicente R. Bernabe, a consulting orthopedic surgeon. AR 213-18. Dr. Bernabe opined that Plaintiff could walk and stand for 6 hours out of an 8-hour day and sit without restriction. AR 217. He opined that Plaintiff could lift and carry, push and pull, bend, crouch, stoop, crawl, walk on uneven terrain, climb ladders, and work at heights without limitation. Id. He also found that Plaintiff did not have a hand use or fine fingering manipulation impairment. Id.

On February 27, 2013, Plaintiff's treating physician Dr. Alan Pan completed the Physical Capacities form. AR 339-43. Dr. Pan opined that

6

Plaintiff could stand/walk for 0 to 2 hours at one time and for 0 to 2 hours total in an 8-hour workday. AR 341. He also opined that Plaintiff could sit for 0 to 2 hours at one time and for 0 to 2 hours total in an 8-hour workday. Id. Dr. Pan checked the box indicating that Plaintiff is "restricted in using hands/fingers for repetitive motions" due to arthritis in both hands. Id. Dr. Pan opined that Plaintiff could occasionally lift/carry 10 pounds and could never lift/carry more than 10 pounds, climb, balance, stoop, kneel, crouch, crawl, or reach. AR 342.

        c.    Alleged Amendment of Onset Date

At the 2013 hearing, the ALJ explained to Plaintiff that if he found that she was disabled, he would "have to also determine the date that [her] disability began." AR 35. He then asked, "you're alleging that your disability began on January 1st, 2010." Id. Plaintiff responded, "Yes." Id. On July 16, 2014, Plaintiff's counsel sent a letter to the Appeals Council, AR 205, along with medical records relating to Plaintiff's treatment for a work-related accident on May 26, 2003, AR 674-956. The letter stated, "We hereby formally move to amend her [alleged onset date] to May 26, 2003." AR 205. Plaintiff's counsel argued that "[w]ith this new evidence, it is clear that the statements made by [Plaintiff] are supported by and consistent with the objective evidence, and the treating physician statements are also supported by objective evidence." Id. The Appeals Council considered the letter and additional medical records. See AR 2, 5-6. The Appeals Council "found that this information does not provide a basis for changing the [ALJ's] decision." AR 2.

    **2.    Analysis**

The Court begins with two preliminary issues before reaching Plaintiff's contentions that the ALJ erred in considering the medical evidence. First, the Court agrees with Plaintiff that it must consider whether the ALJ's decision

can stand notwithstanding the new evidence submitted to the Appeals Council. Social Security Administration regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012) (citing 20 C.F.R. § 404.970(b)). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Id. at 1163. "Remand is necessary where there is a 'reasonable possibility' that the new evidence might change the outcome of the administrative hearing." Borrelli v. Comm'r of Soc. Sec., 570 F. App'x 651, 652 (9th Cir. 2014) (quoting Booz v. Sec'y of Health & Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984)).

Second, the Court rejects Plaintiff's contention that it must review the ALJ's decision using the amended onset date of May 26, 2003. Plaintiff did not seek to amend her onset date at the administrative hearing; to the contrary, she confirmed that her disability began on January 1, 2010. AR 35. Later, in her letter to the Appeals Council requesting review of the ALJ's decision, Plaintiff submitted new evidence for consideration and also requested to amend her onset date to May 26, 2003. AR 205, 674, 956. The Appeals Council evaluated Plaintiff's new evidence and denied her request for review. AR 1-3. The Appeals Council did not expressly address Plaintiff's request to amend, and adopted the ALJ's decision as "the final decision of the Commissioner." See AR 1-7. The Court will review Plaintiff's arguments using the January 1, 2010 onset date used by the ALJ after Plaintiff confirmed it at the administrative hearing. See Anderson v. Comm'r of Soc. Sec. Admin., No. 13-145, 2014 WL

346296, at *6 (N.D. Ohio Jan. 30, 2014) (deciding to use onset date used by ALJ where Appeals Council did not address claimant's request to amend alleged onset date); Freeman v. Comm'r of Soc. Sec., No. 07-536, 2008 WL 2074019, at *1 n.2 (W.D. Mich. May 14, 2008) (same).[3]

### a. Plaintiff Has Not Demonstrated that Shoulder or Back Problems Had More Than a Minimal Effect on Her Ability to Perform Basic Work Activities

Plaintiff argues that despite "substantial documentation of Plaintiff's bilateral shoulder impairments," the ALJ "fail[ed] to find any impairments involving Plaintiff's shoulders." JS at 6. Plaintiff further contends that the ALJ's finding that her back impairment was not severe "is clearly erroneous and unsupported by the medical evidence." Id. at 7. The Court disagrees.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At step two of the sequential evaluation process, the claimant has the burden to show that she has one or more "severe" medically determinable impairments that meets the "duration requirement." See Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (claimant bears burden at step two); 20 C.F.R. § 404.1520(a)(4)(ii) (claimant not disabled at step two if she does "not have a severe medically determinable physical or mental impairment that meets the duration requirement").

---

[3] Moreover, the record contains at least some information at odds with a 2003 onset date. As previously discussed, the record indicates that Plaintiff returned to work after both her May 26, 2003 back injury and November 8, 2005 shoulder injury, albeit with modified duties, until she was taken off work in July 2006 by her doctor. See AR 725, 747.

The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1521(a). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54). An impairment is not severe if it is only a slight abnormality with "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3 (1985); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). A "finding of no disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment." Webb, 433 F.3d at 688 (reversing a step two determination "because there was not substantial evidence to show that [the claimant's] claim was 'groundless'").

Here, the record does not establish that either of Plaintiff's shoulders had more than a minimal effect on her ability to perform basic work activities after January 1, 2010. The additional evidence submitted by Plaintiff reflects that before her surgery on March 23, 2007, she was limited due to left-shoulder pain. See AR 678. This evidence also reflects that Plaintiff's right shoulder was somewhat limited due to pain before she was given a steroid injection in May 2007. See AR 679, 942 (May 2007 note indicating Plaintiff's right shoulder had full range of motion and strength, but with pain), 945. However, as of August 14, 2007, both of Plaintiff's shoulders had improved. Dr. Sofia noted that

Plaintiff's left shoulder had full motion and excellent strength with minimal pain. AR 955. He also noted that her right shoulder had an "excellent exam" with "full motion and strength" and "almost no discomfort." Id. Plaintiff told Dr. Sofia that she was "happy with her left shoulder, had "no trouble" with the right, and could "probably work." AR 954.

The only records from the relevant time period Plaintiff points to as evidence of a severe shoulder impairment are the opinions of her treating physicians, Dr. Pasi and Dr. Scheel. As discussed further below, the ALJ properly discounted Dr. Pasi's and Dr. Scheel's opinions for several reasons, including that they were not supported by the objective evidence. See AR 23. As the ALJ noted, Plaintiff had "complaints of left shoulder pain" on March 22, 2010, AR 21 (citing AR 261), but an October 14, 2011 x-ray of her left shoulder was "normal," id. (citing AR 296, 574). The ALJ also considered the opinion of Dr. Bernabe, the consultative orthopedic examiner, who noted that Plaintiff had full and painless range of motion in both shoulders, with no sign of impingement or instability. See AR 23, 215.[4]

Nor did Plaintiff meet her burden of demonstrating a severe back impairment. As the ALJ acknowledged, Plaintiff had "significant treatment for her back problems" before January 1, 2010, but "the evidence shows only sporadic mention of back problems with minimal treatment that does not support allegations that these symptoms caused significant limitations during

---

[4] Some evidence indicates that Plaintiff's right shoulder began to deteriorate after her date last insured. The doctor who performed an MRI examination of Plaintiff's right shoulder on January 10, 2013, noted Plaintiff's "history" was "[s]houlder pain and limited motion for nine months." AR 556. On April 17, 2013, Plaintiff's physical therapist noted that Plaintiff reported that her right shoulder pain "started insidiously" in February 2012. AR 463. Plaintiff does not, however, cite any evidence showing that she was limited by her right shoulder during the relevant time period.

the relevant period." AR 18. On July 15, 2010, Plaintiff complained of back pain and was prescribed medication. Id. (citing AR 260). However, Plaintiff "had no further significant treatment for back pain until she fell and hurt her back on March 14, 2011 and was simply seeking medication refills." Id. (citing AR 251). Indeed, Plaintiff testified at the hearing that her back had been treated with just pain medication since 2007. AR 51. An x-ray shortly after the relevant period on December 27, 2011 showed some straightening of the cervical curve with "no other abnormalities." AR 18-19 (citing AR 292); see also AR 570. Again, Plaintiff relies heavily on the properly discounted opinions of Dr. Pasi and Dr. Scheel. See JS at 9. Accordingly, the Court finds that Plaintiff has not met her burden of showing that she had a severe shoulder or back impairment.

                b.      The ALJ Did Not Err in Giving Little Weight to the Treating Physicians' Opinions

Plaintiff contends that "only after her worker's compensation case is considered and properly developed do the limitations expressed by the treating physicians Drs. Pasi, Scheel, and Pan make sense," because their opinions are "completely consistent with and supported by the objective medical findings and opinions expressed by worker's compensation physicians." JS at 9.

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r,

12

Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things. 20 C.F.R. § 404.1527(c).

The ALJ provided specific and legitimate reasons for giving "little weight" to Dr. Pasi's, Dr. Scheel's, and Dr. Pan's controverted opinions. AR 23. First, the ALJ noted that their opinions were set forth in "checklist-style forms" that "appear to have been completed as an accommodation to" Plaintiff and "include only conclusions regarding functional limitations without any rationale for those conclusions." Id. Despite finding that Plaintiff had extreme physical limitations, Dr. Pasi, Dr. Scheel, and Dr. Pan cited no supporting medical evidence, test results, or clinical findings in their Physical Capacities forms. See AR 334-38, 338-43, 349-51. Nor does Plaintiff point to any clinical findings in their treatment notes that would support such limitations. And to the extent Dr. Pasi, Dr. Scheel, and Dr. Pan based their opinions on Plaintiff's own reports of her symptoms, the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints for the reasons discussed below. As such, the ALJ permissibly discounted Dr. Pasi's, Dr. Scheel's, and Dr. Pan's opinions on this basis. See Thomas, 278 F.3d at 957 (stating that ALJ "need not accept the opinion of . . . a treating physician" if it is "brief, conclusory, and inadequately supported by clinical findings");

Tonapetyan v. Holder, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that when ALJ properly discounted claimant's credibility, he was "free to disregard" doctor's opinion that was premised on claimant's subjective complaints).

Second, the ALJ found that Dr. Pasi's, Dr. Scheel's, and Dr. Pan's opinions were not supported by the objective evidence and "the course of treatment pursued by these doctors have not been consistent with what one would expect if [Plaintiff] was truly disabled." AR 23. Plaintiff counters that "the opinions expressed by these three treating physicians are consistent with and supported by the totality of medical evidence of record . . . which now includes the entire worker's compensation record." JS at 12. However, other than general references to "surgical reports," "epidural reports," and "MRI findings," see id., Plaintiff does not identify any specific medical records nor does she explain which functional limitations such records support. Moreover, the ALJ extensively reviewed the medical evidence and noted that "the positive objective clinical and diagnostic findings" did not support more restrictive functional limitations than those assessed in Plaintiff's RFC. See AR 21. As the ALJ noted, x-rays of Plaintiff's knees and hands on September 23, 2010 revealed "no bony abnormalities." AR 21 (citing AR 303-06, 582-85); see also AR 258 & 444 (October 2010 progress note indicating "negative" results of x-rays of both knees and hands). The ALJ noted that x-rays of Plaintiff's left shoulder, wrist, and elbow on October 14, 2011 were "normal." AR 21 (citing AR 296-98, 574-76). The ALJ also noted that diagnostic imaging of Plaintiff's right knee on January 4, 2012 showed "minimal degenerative spurring at the medial tibial condyle, but was otherwise normal." AR 21-22 (citing AR 290, 569). The ALJ noted that Plaintiff had a "normal" CT head scan on May 30, 2012. AR 22 (citing 567). The ALJ further noted that Plaintiff's hypothyroidism was managed by medication. Id. (citing AR 321, 370). Likewise, the record reflects that Plaintiff's pain symptoms were treated with

over-the-counter and prescription medication during the relevant time period. See, e.g., AR 427, 429-36, 439-40, 444-50. It was permissible for the ALJ to discount the opinions of Dr. Pasi, Dr. Scheel, and Dr. Pan on this basis. See Thomas, 278 F.3d at 957; Senko v. Astrue, 279 F. App'x 509, 511 (9th Cir. 2008) (finding that ALJ gave several "clear and convincing" reasons for rejecting treating doctor's opinion, including that his opinion was not supported by his treatment notes or other evidence in record and that treatment notes showed that conditions responded to medication ).

**B.  Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to give legally sufficient reasons for discounting her credibility. JS at 25-30. For the reasons discussed below, the Court disagrees.

**1.  Applicable Law**

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the alleged pain or other symptoms alleged.'" Id. at 1036 (citation omitted). Once a claimant does so, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citing Smolen, 80 F.3d at 1283-84). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible

and what evidence undermines the claimant's complaints." <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted). The ALJ may consider, among other factors, a claimant's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, her work record, and her daily activities. <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997); <u>Smolen</u>, 80 F.3d at 1283-84 & n.8. If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas</u>, 278 F.3d at 959.

    **2.    Relevant Facts**

At the hearing, Plaintiff testified that she lives with her husband and 13-year-old daughter. AR 44. Plaintiff said that she is her daughter's primary caretaker. <u>Id.</u> Her husband is disabled, and his mother is his primary caretaker. AR 45. Plaintiff testified that her mother-in-law, who lives about 30 minutes away, comes to help them five days a week. AR 45-46. Plaintiff also has a 28-year-old daughter who "comes over all the time and help[s] out." <u>Id.</u> Plaintiff said that her mother-in-law "do[es] everything," and if her husband needs something, one of their daughters will "go and get it for him." AR 45. Plaintiff testified that her mother-in-law takes care of the household and upkeep of the house, including laundry, cooking, and cleaning. AR 46. Plaintiff has a driver's license and drives "four days a week," usually to the store and her daughter's bus stop. <u>Id.</u> Plaintiff's daughter accompanies Plaintiff when she shops for groceries. <u>Id.</u>

Plaintiff testified that she has joint and muscle pain, which primarily affects her legs and back. AR 47-48. "[I]t mess[es] with [her] walk" and "keep[s] [her] from doing different stuff, washing dishes, cleaning the house." AR 48. Plaintiff's whole right arm and fingers lock up. <u>Id.</u> She takes pain

medication twice a day and has also gone to physical therapy. AR 47-48. Plaintiff has a cyst in the back of her right leg and "the pain just hit [her] all of a sudden" when she is walking sometimes, and she feels like she is "about to fall from that pain, it's like a sharp pain in the back." AR 50. Plaintiff reported that she has a herniated disc that affects her left side, and when she tries to clean or mop, "it goes all the way into the thigh, and it's like a lot of pressure there, pain in there." AR 50-51. Plaintiff's back has been treated only with pain medication since 2007. AR 51. She also takes pain medication for headaches. AR 51-52. Plaintiff has to exercise her neck because of stiffness, and recently went to urgent care a few times to get a shot for the pain. AR 52-53.

Plaintiff testified that "it's hard" to lift and carry, and she "can't lift nothing heavy." AR 54-55. When she tries to use a spoon or cut up food, she has "a lot of tingling in [her] fingers." AR 55. She said that if she stands at the kitchen sink for a long time to "try to wash dishes, all the pressure goes from the . . . back into the left leg into the thigh." Id. At the end of the hearing, Plaintiff asserted,

> . . . I just wanted to say I'm not able to do housekeeping or cleaning or any kind of job. Because if I'm—when I'm at home and I try to do—it's very physical work, it hurts a lot. It's all in my back, my hands, my arms, my right arm is always locking up on me, my fingers, they cramp up. So I don't—I'm not able to do any kind of work.

AR 62.

### 3. Discussion

As an initial matter, the ALJ credited many of Plaintiff's subjective complaints, as reflected in the "limited light limitations adopted" in her RFC. AR 24. The ALJ also noted that he had "generously consider[ed] [Plaintiff's] subjective complaints." Id. To the extent the ALJ partially discredited

17

Plaintiff's testimony and allegations, AR 20-21, he gave clear and convincing reasons for doing so.[5]

First, the ALJ found that "the evidence submitted does not support the severity of symptoms alleged." AR 20. As discussed above, x-rays and other diagnostic imaging during the relevant time period yielded mostly normal results. Dr. Bernabe noted that Plaintiff had normal ranges of motion, intact motor strength and sensation, and normal gait. See AR 215-16. The ALJ permissibly relied on this evidence to discount Plaintiff's allegations of debilitating functional limitations, such as her claims that she has difficulty walking, AR 47-48, 50, and "it's hard" for her to lift and carry anything, AR 54-55. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and

---

[5] In making his credibility finding, the ALJ did not cite any evidence of malingering. The Court notes that, on November 29, 2005, an examining physician noted as follows:

> Supine straight leg raising was achieved to 90 degrees and associated with pain in the back, but <u>seated straight leg raising, which is the same maneuver, which achieved 90 degrees, resulted in no pain</u>, which raises a red flag as the movements of forward flexion and supine and seated straight leg raising are the same movements done in different positions and should register the same responses.

AR 732. On June 4, 2008, a different examining physician noted that Plaintiff "only performed 10% of a full squat" and "[i]t did not appear she was putting forth her best effort." AR 656, 820.

persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities.").

Second, the ALJ found that, despite Plaintiff's allegedly debilitating symptoms, her daily activities could be "quite demanding both physically and emotionally." AR 21. Plaintiff claimed that she was so debilitated by her medical conditions that she was, for example, unable to care for her disabled husband, wash dishes, clean the house, or use a spoon without difficulty. But Plaintiff was the primary caretaker of her 13-year-old daughter, she drove four times a week, and shopped for groceries with her daughter. The ALJ permissibly discounted Plaintiff's credibility based on the conflict between her alleged limitations and her daily activities. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that ALJ may discredit claimant's testimony when "claimant engages in daily activities inconsistent with the alleged symptoms" (citing Lingenfelter, 504 F.3d at 1040)); id. ("Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ also noted that the treatment Plaintiff received "has been essentially routine and conservative in nature." AR 20. As previously discussed, the record reflects that Plaintiff's symptoms were treated with over-the-counter and prescription pain medication during the relevant time period. See, e.g., AR 427, 429-36, 439-40, 444-50. Plaintiff also testified at the hearing that her leg and back pain have been routinely treated with pain medication and physical therapy. AR 47-48, 51. She takes pain medication for tendonitis, which affects her arms, wrist, and fingers. AR 48. Plaintiff testified that pain medication "helps" with her headaches. AR 52. A conservative treatment history is a legitimate basis for an ALJ to discount a claimant's credibility. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Parra v. Astrue,

19

481 F.3d 742, 751 (9th Cir. 2007) (noting that evidence of conservative treatment is sufficient to discount claimant's testimony regarding severity of impairment).

Plaintiff contends that her treatment history was not conservative, noting that she "has undergone multiple surgical procedures including epidurals and shoulder surgery." See JS at 26.[6] This appears to refer to treatment Plaintiff received before the onset date alleged in her application. As discussed above, the record reflects that Plaintiff's left shoulder improved post-surgery. But even if the ALJ erred in analyzing Plaintiff's treatment history, any error was harmless because he provided two other reasons, both of which were supported by substantial evidence, for discounting Plaintiff's subjective complaints. See Carmickle, 533 F.3d at 1162 ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal" (alterations in original)).

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: March 31, 2017

DOUGLAS F. McCORMICK
United States Magistrate Judge

---

[6] Plaintiff also testified at the hearing that months after her date last insured, she got "some kind of shot" for neck pain a few times at urgent care. See AR 52-53.